**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE:** | Case No. 10-71403-pjs |
| | Chapter 7 |
| MuniVest Services, LLC, *et al.*[1] | *(Jointly Administered)* |
| Debtors. | Hon. Phillip J. Shefferly |
| | |
| Gene R. Kohut, Chapter 7 Trustee for MuniVest Services, LLC, *et al.*, | Adv. P. No. 12- |
| Plaintiff, | |
| v. | |
| McCormick & O'Brien, LLP, | |
| Defendant. | |

## COMPLAINT

Plaintiff Gene R. Kohut ("Trustee"), duly appointed Chapter 7 trustee of MuniVest Services, LLC, a/k/a MuniVest, Group, a/k/a MuniVest Financial Group, a/k/a MuniVest Financial Group of Illinois, LLC, a/k/a MuniVest Financial Group LLC, a/k/a MuniVest Capital International, LLC, and MuniVest Financial Group LLC (collectively, "MuniVest") [Case No. 10-71403-pjs] and Dante DeMiro, a/k/a Dante Thomas Garcia DeMiro, a/k/a Dante T. DeMiro, a/k/a Dante Thomas-Garcia DeMiro, a/k/a Daunte DeMiro ("DeMiro," individually and collectively with MuniVest, "Debtors") [Case No. 10-71404-pjs], through counsel, Wolfson Bolton PLLC, for his Complaint against McCormick & O'Brien, LLP ("McCormick" or "Defendant") alleges:

---

[1] The Debtors are: MuniVest Services, LLC, a/k/a MuniVest, Group, a/k/a MuniVest Financial Group, a/k/a MuniVest Financial Group of Illinois, LLC, a/k/a MuniVest Financial Group LLC, a/k/a MuniVest Capital International, LLC, address: 29355 Northwestern Highway, Suite 110, Southfield, MI 48034, MuniVest Financial Group LLC, and Dante DeMiro, a/k/a Dante Thomas Garcia DeMiro, a/k/a Dante T. DeMiro, a/k/a Dante Thomas-Garcia DeMiro, a/k/a Daunte DeMiro. MuniVest Financial Group LLC became a debtor in these proceedings under the Court's Order Granting Chapter 7 Trustee's Motion for Substantive Consolidation of MuniVest Services, LLC and MuniVest Financial Group LLC *Nunc Pro Tunc* to the Petition Date [Docket No. 303].

{00005642.DOCX } 1

## NATURE OF THIS PROCEEDING

1. This adversary proceeding arises from a massive Ponzi scheme in which convicted criminal Dante DeMiro admitted to stealing millions of dollars from victims under the guise of his so-called "investment" companies, MuniVest. Debtors used the legal services provided by McCormick to evade detection and prolong a Ponzi scheme that swindled investors out of millions of dollars. McCormick received avoidable transfers ("Transfers," detailed on Exhibit A) from Debtors totaling at least $32,810.21 to the detriment of other creditors who received nothing, thereby creating relative "winners" and "losers" in the Ponzi scheme. Of this amount, at least $5,222.20 ("Preferential Transfers") is also recoverable as preferential. The Bankruptcy Code charges the Trustee with addressing this inequity by bringing avoidance actions such as this adversary proceeding.

2. As set forth below, DeMiro made these Transfers to McCormick to conceal his ongoing fraud and to prevent Debtors' assets from being available to satisfy claims of Debtors' creditors and other investors. The Trustee seeks to avoid and recover these Transfers for the benefit of Debtors' estates.

## JURISDICTION, VENUE, AND PARTIES

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334, and 11 U.S.C. §§ 544, 547, 548, and 550.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), and (O).

5. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001.

6. Venue in this district is proper under 28 U.S.C. § 1409.

7. The Trustee is the court-appointed trustee of Debtors.

8. Defendant McCormick is a New York limited liability partnership with its principal place of business in New York City, New York and conducts business in Michigan.

9. The transactions described herein originated from Debtors' Michigan accounts based on representations made in Michigan.

## **BACKGROUND**

10. On September 16, 2010, DeMiro was arrested by federal agents for his orchestration of a Ponzi scheme that defrauded numerous investors and other creditors.

11. On October 7, 2010, a federal grand jury indicted DeMiro on three counts of bank fraud and two counts of wire fraud under 18 U.S.C. §§ 1334 and 1343, respectively.

12. On October 12, 2010 ("Petition Date"), the largest victim of DeMiro's criminal acts, Mona Shores Public Schools, filed involuntary Chapter 7 bankruptcy petitions against Debtors in the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court") [Case No. 10-71403; Case No. 10-71404].

13. On November 5, 2010, the Bankruptcy Court entered orders for relief granting the involuntary petitions in Debtors' cases [Case No. 10-71403, Docket No. 8; Case No. 10-71404, Docket No. 8], and Gene R. Kohut was appointed Trustee of Debtors.

14. On July 12, 2011, DeMiro was sentenced following a guilty plea.

15. DeMiro has admitted, among other things, that:

(a) DeMiro is guilty of all five counts in the indictment;

(b) DeMiro is the founder and managing director of the MuniVest entities;

(c) DeMiro dominated and controlled the MuniVest entities and the MuniVest entities were DeMiro's alter egos;

(d) DeMiro operated a bank and wire fraud ponzi scheme utilizing the MuniVest entities;

(e) In furtherance of this scheme, DeMiro falsely promised investor clients that he would invest their funds in various CDs; and

(f) DeMiro did not invest their funds as promised, but instead, used their funds to purchase personal items, real property, gamble, make payments to other investors in the same scheme, and make loans to several individuals and a local jewelry store.

Rule 11 Plea Agreement [Case No. 10-20594, Docket No. 33].

16. After DeMiro's admission of guilt and sentencing, the Trustee and the United States Attorney's Office for the Eastern District of Michigan ("USAO") reached an agreement ("Coordination Agreement") clarifying the property of Debtors' estates.

17. The Coordination Agreement provides, among other things, that any assets not included in the July 7, 2011 Stipulated Preliminary Order of Forfeiture ("Forfeiture Order") [United States District Court for the Eastern District of Michigan Southern Division, Case No. 10-20594, Docket No. 40] are property of the Debtors' estates. Coordination Agreement, ¶ 3. **Debtors' estates' property expressly *includes* proceeds of avoidance actions.** *Id.*

18. The Bankruptcy Court approved the Coordination Agreement on September 14, 2011 by entering the Order Granting the Motion pursuant to Bankruptcy Rule 9019 and Section 105(a) of the Bankruptcy Code Authorizing and Approving Coordination Agreement by and between Chapter 7 Trustee and the United States Attorney's Office for the Eastern District of Michigan [Case No. 10-71403, Docket No. 187].

19. As the Trustee appointed by this Court, the Trustee must use his authority under the Bankruptcy Code to pursue recovery from creditors who received preferences, fraudulent transfers, and/or payouts of fictitious profits to the detriment of other defrauded creditors whose money was consumed by the Ponzi scheme.

20. This and similar adversary proceedings are being brought to recapture monies paid to or for the benefit of certain creditors so that this property can be equitably distributed among the victims of Debtors in accordance with the provisions of the Bankruptcy Code.

## **THE PONZI SCHEME'S OPERATION**

21. DeMiro perpetrated his Ponzi scheme by falsely promising investor clients that he would invest their funds in certificates of deposit and other investment vehicles.

22. At all relevant times, DeMiro operated MuniVest as a Ponzi scheme and DeMiro made transfers in an effort to hinder and delay other current and prospective customers of MuniVest from discovering the fraud.

23. DeMiro prohibited investors from making certain transfers directly to the financial institutions purportedly offering the certificates of deposit, and instead requested that the investors send funds directly to MuniVest.

24. The money received from investors was not set aside to buy certificates of deposit or other investment vehicles as purported, but instead was used to make the distributions to, or payments on behalf of, other investors.

25. The money sent to MuniVest for investment was simply used to keep the operation going and to enrich DeMiro, his associates and others, including McCormick.

26. Once a customer invested with Debtors, DeMiro would generate and communicate false financial statements to the customer; these statements indicated that the customer's principal had, in fact, earned the implausibly large amounts of interest that DeMiro had promised.

27. During the scheme, certain investors requested and received distributions of "interest," which were nothing more than fictitious profits.

28. Other investors redeemed or closed their accounts, or removed portions of them, and were paid consistently with the statements they had been receiving from Debtors.

29. Certain other investors received funds to the detriment of other creditors, some of whom received nothing from Debtors.

30. Debtors used the funds deposited from investors to continue operations and pay redemption proceeds to or on behalf of other investors and to make other transfers.

31. Due to the siphoning and diversion of new investments to pay requests for payments or redemptions from other investors, Debtors did not have funds to pay investors on account of their new investments.

{00005642.DOCX }                                   5

12-05920-pjs    Doc 1    Filed 11/02/12    Entered 11/02/12 17:42:52    Page 5 of 15

32. Debtors were able to stay afloat only by using the principal invested by some clients to pay other investors.

33. McCormick was among the primary beneficiaries of this scheme, receiving $32,810.21, where other creditors received nothing.

34. At all relevant times, the liabilities of Debtors were significantly greater than the assets of Debtors.

35. At all relevant times, Debtors were insolvent in that (i) the sum of their debts was greater than all of the Debtors' assets at a fair valuation; (ii) Debtors could not meet their debts as they became due; and (iii) at the time of the transfers, Debtors were left with insufficient capital.

### **MCCORMICK'S RECEIPT OF TRANSFERS FROM PONZI SCHEME**

36. At all relevant times, McCormick was a creditor of Debtors.

37. Before the Petition Date, Debtors made Transfers to McCormick from accounts in Michigan in order to perpetuate their Ponzi scheme.

38. McCormick is a law firm that provided legal services which helped Debtors prolong their Ponzi scheme.

39. The Financial Industry Regulatory Authority ("FINRA") opened an investigation into Debtors' practices in 2008.

40. FINRA found that DeMiro was violating conduct rules by selling promissory notes issued by MuniVest without notice to the broker-dealer.

41. McCormick worked with Debtors to address FINRA's findings.

42. McCormick's services helped delay FINRA's sanctions against Debtors.

43. On September 23, 2010, DeMiro accepted FINRA's finding that he violated NASD Conduct Rules 3040 and 2110, and agreed to a suspension from associating with any FINRA firm for nine months and a $5,000 fine.

44. The Transfers were made to or for the benefit of McCormick and include, but are not limited to, the Transfers listed on Exhibit A.

45. Each Transfer constituted a transfer of an interest of Debtors' property.

46. Debtors made at least $5,222.20 of the Transfers to McCormick within 90 days of the Petition Date.

47. Many persons were creditors of Debtors both at the time the Transfers occurred and the Petition Date, including the County of Lapeer, UAW Local 600, and UAW Local 900.

48. McCormick has intentionally taken advantage of the benefits of conducting transactions in the State of Michigan and has submitted itself to the jurisdiction of this Court for the purposes of this proceeding.

49. The Transfers were and continue to be property of Debtors' estates and subject to turnover pursuant to 11 U.S.C. § 542.

50. The Transfers were false and fraudulent payments made in furtherance of Debtors' Ponzi scheme.

51. The Transfers are avoidable and recoverable under 11 U.S.C. §§ 544, 547, 548, 550 and 551 of the Bankruptcy Code and applicable provisions of Michigan's Uniform Fraudulent Transfers Act.

52. To the extent that any of the recovery counts may be inconsistent with each other, they are to be treated as being pled in the alternative.

53. The Trustee's investigation is ongoing and the Trustee reserves the right to (i) supplement the information regarding the Transfers and any additional transfers, and (ii) seek recovery of any additional transfers.

**COUNT ONE**
**TURNOVER AND ACCOUNTING 11 U.S.C. § 542**

54. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

55. The Transfers constitute property of the estate to be recovered and administered by the Trustee pursuant to 11 U.S.C. § 541.

56. As a result of the foregoing, pursuant to 11 U.S.C. § 542, the Trustee is entitled to the immediate payment and turnover from Defendant of any and all transfers made by Debtors, directly or indirectly, to Defendant.

57. As a result of the foregoing, pursuant to section 11 US.C. § 542, the Trustee is also entitled to an accounting of all Transfers received by the Defendant from Debtors, directly or indirectly.

## COUNT TWO
## PREFERENTIAL TRANSFER – 11 U.S.C. §§ 547(b), 550 and 551

58. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

59. Within the 90-day period before the Petition Date, Debtors made or caused to be made Preferential Transfers of $5,222.20 listed on Exhibit A to Defendant from Debtors' bank account(s).

60. The Preferential Transfers constituted transfers of an interest in Debtors' property – money from Debtors' bank account(s).

61. The Preferential Transfers were to or for the benefit of Defendant.

62. Defendant was a creditor of one or more Debtors on the dates that the Preferential Transfers were made as a result of the legal services Defendant provided to Debtors.

63. The Preferential Transfers were made for or on account of antecedent debt owed by one or more Debtors before the Preferential Transfers were made. Specifically, the Preferential Transfers represent payment for legal services.

64. Pursuant to 11 U.S.C. § 547(f), Debtors are presumed to have been, and were in fact, insolvent at the time the Preferential Transfers were made. Further, Debtors are presumed

to have been, and were in fact, insolvent by virtue of Debtors' admission that they were engaged in a Ponzi scheme at the time the Preferential Transfers were made.

65. Due to the size of claims and shortfall in recoverable assets, unsecured creditors will not be paid the full amount of their claims in Debtors' bankruptcy cases.

66. Defendant was an unsecured creditor of Debtors on the date that the Preferential Transfers were made. The Preferential Transfers enabled Defendant to receive more than Defendant would receive if (i) this case was a case under chapter 7 of the Bankruptcy Code, (ii) the transfers had not been made, and (iii) Defendant received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.

67. The Preferential Transfers constitute transfers avoidable by the Trustee pursuant to 11 U.S.C. § 547(b) and recoverable from Defendant pursuant to 11 U.S.C. § 550(a).

68. As a result of the foregoing, the Trustee is entitled to a judgment pursuant to 11 U.S.C. §§ 547(b), 550, and 551 avoiding and recovering the Preferential Transfers, or the value thereof, for the benefit of the Debtors' estates.

## COUNT THREE
## CLAIM DISALLOWANCE - 11 U.S.C. § 502

69. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

70. Section 502(d) of the Bankruptcy Code provides that unless an entity or transferee that has received a transfer avoidable under 11 U.S.C. § 547 has paid the amount, or turned over such property, for which such entity or transferee is liable under 11 U.S.C. § 550, any claim of such entity or transferee shall be disallowed.

71. Defendant has not paid or surrendered to the Trustee the Preferential Transfers. Therefore, any present or future claims Defendant may have against Debtors' estates should be disallowed.

## COUNT FOUR
## FRAUDULENT TRANSFERS – 11 U.S.C. §§ 548(a)(1)(A), 550, AND 551

72. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

73. The Transfers were made on or within two years before the Petition Date.

74. By virtue of Debtors' engagement in a Ponzi scheme, the law presumes, and it is true in fact, that the Transfers were made by Debtors with the actual intent to hinder, delay, and defraud some or all of Debtors' then existing or future creditors.

75. Defendant rendered no value to Debtors because a criminal enterprise cannot receive value as defined in 11 U.S.C. § 548(c).

76. Defendant's services helped prolong the Ponzi scheme.

77. The Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to 11 U.S.C. § 548(a)(1)(A) and recoverable from Defendant pursuant to 11 U.S.C. § 550(a).

78. As a result of the foregoing, pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550(a) and 551, the Trustee is entitled to a judgment avoiding and recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates.

## COUNT FIVE
## FRAUDULENT TRANSFER – 11 U.S.C. §§ 548(A)(1)(B), 550, AND 551

79. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

80. The Transfers were made on or within two years before the Petition Date.

81. Debtors received less than a reasonably equivalent value in exchange for each of the Transfers.

82. Specifically, as a matter of law, there was no reasonably equivalent value exchanged because a criminal enterprise cannot receive reasonably equivalent value as defined in 11 U.S.C. § 548(a)(1)(B).

83. Defendant's services helped prolong the Ponzi scheme.

84. Debtors are presumed to have been, and were in fact, insolvent by virtue of Debtors' admission that they were engaged in a Ponzi scheme at the time each Transfers was made, or became insolvent as a result of the Transfers.

85. At the time of each of the Transfers, Debtors were engaged in a business or a transaction, or were about to engage in a business or a transaction, for which any property remaining with Debtors was an unreasonably small capital.

86. At the time of each of the Transfers, Debtors intended to incur, or believed that they would incur, debts that would be beyond Debtors' ability to pay as such debts matured.

87. The Transfers constitute a fraudulent transfer avoidable by the Trustee pursuant to 11 U.S.C. § 548(a)(1)(B) and recoverable from Defendant pursuant to 11 U.S.C. § 550(a).

88. As a result of the foregoing, pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a) and 551, the Trustee is entitled to a judgment avoiding and recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates.

## COUNT SIX
## FRAUDULENT TRANSFER –
## MCL §§ 566.34(1)(A), 566.37 AND 11 U.S.C. §§ 544, 550(a) AND 551

89. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

90. Section 544(b)(1) of 11 U.S.C. confers upon the Trustee the right to assert for the benefit of all creditors of Debtors' estates any claim to avoid a transfer of property or an obligation incurred by Debtors to the extent that such transfer or obligation could be avoided by an unsecured creditor under otherwise applicable state law.

91. At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured claims against Debtors that were and are allowable under 11 U.S.C. § 502 or that were and are not allowable only under 11 U.S.C. § 502(e).

92. The Transfers were made on or within six years before the Petition Date.

{00005642.DOCX }                                         11

12-05920-pjs    Doc 1    Filed 11/02/12    Entered 11/02/12 17:42:52    Page 11 of 15

93. By virtue of Debtors' engagement in a Ponzi scheme, the law presumes, and it is true in fact, that the Transfers were made by Debtors with the actual intent to hinder, delay or defraud the creditors of Debtors. Debtors made the Transfers to or for the benefit of Defendant in furtherance of a fraudulent investment scheme.

94. Defendant rendered no value to Debtors because a criminal enterprise cannot receive value as defined in MCL § 566.38.

95. Defendant's services helped prolong the Ponzi scheme.

96. As a result of the foregoing, pursuant to MCL §§ 566.34(1)(A) and 566.37 and 11 U.S.C. §§ 544(b), 550(a) and 551, the Trustee is entitled to a judgment avoiding and recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates.

## COUNT SEVEN
## FRAUDULENT TRANSFER –
## MCL §§ 566.34(1)(B), 566.37 AND 11 U.S.C. §§ 544, 550(a) AND 551

97. The Trustee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

98. Section 544(b)(1) of 11 U.S.C. confers upon the Trustee the right to assert for the benefit of all creditors of Debtors' estates any claim to avoid a transfer of property or an obligation incurred by Debtors to the extent that such transfer or obligation could be avoided by an unsecured creditor under otherwise applicable state law.

99. At all times relevant to the Transfers, there have been one or more creditors who have held and still hold matured or unmatured claims against Debtors that were and are allowable under 11 U.S.C. § 502 or that were and are not allowable only under 11 U.S.C. § 502(e).

100. The Transfers were made on or within six years before the Petition Date.

101. Debtors did not receive reasonably equivalent value for the Transfers.

102. Specifically, Defendant rendered no value to Debtors because a criminal enterprise cannot receive value as defined in MCL § 566.38.

103. Defendant's services helped prolong the Ponzi scheme.

104. At the time Debtors made each of the Transfers, Debtors were engaged or were about to engage in a business or a transaction for which the Debtors' remaining assets were unreasonably small in relation to the business or transaction.

105. At the time Debtors made each of the Transfers, Debtors had incurred, were intended to incur, or believed or reasonably should have believed that they would incur debts beyond their ability to pay them as these debts became due.

106. As a result of the foregoing, pursuant to MCL §§ 566.34(1)(B) and 566.37 and 11 U.S.C. §§ 544(b), 550(a) and 551, the Trustee is entitled to a judgment avoiding and recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates.

WHEREFORE, the Trustee respectfully requests this Court enter judgment in favor of the Trustee and against Defendant as follows:

(A) On the First Claim for Relief, pursuant to 11 U.S.C. §§ 542, 550(a), and 551 (i) that the Transfers be immediately delivered and turned over to the Trustee and (ii) for an accounting by Defendant of the property that was the subject of the Transfers or the value of such property;

(B) On the Second Claim of Relief, pursuant to 11 U.S.C. §§ 547, 550(a), and 551, (i) avoiding the Preferential Transfers, (ii) directing that the Preferential Transfers be set aside, and (iii) recovering the Preferential Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates;

(C) On the Third Claim of Relief, pursuant to 11 U.S.C. §502, disallowing any present or future claims Defendant may have against Debtors' estates.

(D) On the Fourth Claim of Relief, pursuant to 11 U.S.C. §§ 548(a)(1)(A), 550(a), and 551, (i) avoiding the Transfers, (ii) directing that the Transfers be set aside, and (iii) recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates;

(E)     On the Fifth Claim of Relief, pursuant to 11 U.S.C. §§ 548(a)(1)(B), 550(a), and 551, (i) avoiding the Transfers, (ii) directing that the Transfers be set aside, and (iii) recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates;

(F)     On the Sixth Claim of Relief, pursuant to pursuant to MCL § 566.34(1)(A) and 566.37 and 11 U.S.C. §§ 544(b), 550(a) and 551, (i) avoiding the Transfers, (ii) directing that the Transfers be set aside, and (iii) recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates;

(G)     On the Seventh Claim of Relief, pursuant to MCL §§ 566.34(1)(B) and 566.37 and 11 U.S.C. §§ 544(b), 550(a) and 551, (i) avoiding the Transfers, (ii) directing that the Transfers be set aside, and (iii) recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtors' estates;

(H)     On all Claims for Relief, pursuant to MCL § 600.6013, awarding the Trustee prejudgment interest;

(I)     On all Claims for Relief, establishment of a constructive trust over the proceeds of the Transfers in favor of the Trustee for the benefit of Debtors' estates;

(J)     Awarding the Trustee all applicable interest, attorney fees, costs, and disbursements of this action; and

(K)     Granting the Trustee such other, further, and different relief as the Court deems just, proper, and equitable.

Respectfully submitted,

WOLFSON BOLTON PLLC

Dated: November 2, 2012       By:  /s/ Adam L. Kochenderfer
                              Scott A. Wolfson (P53194)
                              Adam L. Kochenderfer (P65757)
                              3150 Livernois, Suite 275
                              Troy, MI 48083
                              (248) 247-7102

akochenderfer@wolfsonbolton.com